

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE FROG, SWITCH & MANUFACTURING COMPANY, <br><br> **Plaintiff** <br><br> v. <br><br> COMMISSIONER CARL E. DENSON; COMMISSIONER RAQUEL OTERO de YNGST; COMMISSIONER GREGORY I. CELIA, JR.; COMMISSIONER M. JOEL BOLSTEIN; COMMISSIONER JOSEPH J. BORGIA; COMMISSIONER THEOTIS W. BRADDY; COMMISSIONER ELIZABETH C. UMSTATTD; COMMISSIONER SYLVIA A. WATERS; and COMMISSIONER DANIEL D. YUN, in their official capacities as Commissioners of the PENNSYLVANIA HUMAN RELATIONS COMMISSION; HOMER C. FLOYD, in his official capacity as Executive Director of the PENNSYLVANIA HUMAN RELATIONS COMMISSION; and WILMER J. BAKER, <br><br> **Defendants** | CIVIL NO. 1:CV-01-1746 <br><br>  |

## MEMORANDUM

On September 13, 2001, Plaintiff, The Frog, Switch & Manufacturing Company ("FSM") filed a complaint before this court requesting a declaratory judgment and injunctive relief. Upon the conclusion of discovery, the parties filed cross motions for summary judgment. The magistrate judge to whom this matter

was referred filed a report in which he recommended that Plaintiff's motion for summary judgment be denied and Defendants' motion for summary judgment be granted. Plaintiff has filed objections to the report and recommendation. The parties have briefed the objections, and the court conducted oral argument on the issue. Accordingly, the matter is ripe for disposition. The court must make a *de novo* determination of those portions of the report of the magistrate judge to which objections have been made. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72; M.D.L.R. 72.3.

I. **Background**

Defendant Baker is an FSM employee. He holds a position which is included within a bargaining unit to which Local 4442 of the United Steelworkers of America, AFL-CIO, has been certified as the exclusive bargaining representative under the National Labor Relations Act ("NLRA"). (Stipulation of Facts at ¶ 1.) On March 9, 1998, FSM suspended Baker with intent to discharge him. (*Id.* at ¶ 3.) On March 9, 1998, Baker filed a grievance pursuant to the collective bargaining agreement between FSM and Local 4442. (*Id.* at ¶ 4.) Baker pursued his grievance procedure through to arbitration. (*Id.* at ¶ 6.)

On March 23, 1998, Baker filed an unfair labor practice charge with the National Labor Relations Board ("NLRB") alleging that FSM violated §§ 8(a)(1) and (3) of the NLRA. (*Id.* at ¶ 8.) On July 23, 1998, Baker signed a complaint with the Pennsylvania Human Relations Commission ("PHRC") alleging FSM

terminated his employment because he assisted coworkers in filing complaints against FSM with the PHRC.[1] (*Id.* at ¶ 9.)

On December 18, 1998, the arbitrator reinstated Baker without back pay. (*Id.* at ¶ 12.) On January 26, 1999, the NLRB approved the withdrawal of Baker's unfair labor practice charge. (*Id.* at ¶ 13.) On May 25, 2000, the PHRC found that probable cause existed to credit Baker's allegations that FSM suspended and discharged him in retaliation for having assisted other employees in filing complaints with the PHRC against FSM. (*Id.* at ¶ 15.) On September 13, 2001, FSM filed its complaint in this court requesting a declaratory judgment and injunctive relief. Specifically, FSM claimed that Defendant Baker's claim before the PHRC was preempted by the NLRA.

## II.       Discussion

The Pennsylvania Human Relations Act and Title VII contain anti-retaliation provisions that prohibit discrimination against an employee because the employee has opposed any practice made unlawful by those acts or because the employer has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under those Acts. 42 U.S.C. § 2000e-3(a); 43 Pa. Cons. Stat. § 955(d).

FMS contends that Baker's conduct is assisting other employees in filing complaints with the PHRC is protected concerted activity protected by § 7 of the NLRA and that Baker's claim that FSM terminated his employment in retaliation for such conduct is a claim of an unfair labor practice under § 8 of the

---

[1]In his complaint before the PHRC, Baker seeks back pay for the time he was discharged.

3

NLRA. Defendants agree. (*See* Report and Recommendation, January 2, 2002, at p. 3.) Thus, both statutes protect retaliation for reporting or assisting others in reporting activity that is prohibited by the Acts.

FSM argues that pursuant to *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959), the NLRA preempts the state action. In *Garmon*, the Court held that "[w]hen an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *Id.* at 245.

In *St. Thomas-St. John Hotel & Tourism Association v. Government of the U.S. Virgin Islands*, 218 F.3d 232 (3d Cir. 2000), the Third Circuit held that "*Garmon* preemption . . . protects the primary jurisdiction of the NLRB by displacing state jurisdiction over conduct which is 'arguably within the compass of § 7 or § 8 of the Act.'" *Id.* at 239(citing *Garmon, supra*, 359 U.S. at 246). The Third Circuit court went on to state that "[t]he doctrine is based on an 'overriding interest in a uniform, nationwide interpretation of the federal statute by the centralized expert agency created by Congress.'" *Id.* (citing *Garmon*, 359 U.S. at 258).

Plaintiff further contends that preemption is supported by *Chaulk Services, Inc. v. Massachusetts Commission Against Discrimination*, 70 F.3d 1361 (1st Cir. 1996). In that case, the majority held that under *Garmon* preemption, an employee's charge of sex discrimination before the Commission was preempted by federal law where an employee complained of incidents of interference with her activities as a union organizer because of her sex, and the very same conduct

4

provided a factual basis for unfair labor practice charges brought by the union on her behalf.

Defendants argue that Baker's claim falls within an exception to the *Garmon* preemption doctrine. Where the conduct at issue is of only peripheral concern to federal labor policy, the States are not precluded from regulating the activity. Where the regulated conduct touches interests "so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, [a court] could not infer that Congress has deprived the States of the power to act." *Garmon*, 359 U.S. at 244. Defendants argue the second exception applies in the instant case.

In support of adopting this exception, Defendants look to the dissent in *Chaulk Services,* which is the position the magistrate adopted in the captioned matter. The dissent, citing to various cases, noted that the NLRA and Title VII provide concurrent remedies and that Title VII claims are not preempted by the NLRA. *Chaulk Services*, 70 at 1375 (Lynch, J. dissenting).

> It is possible to draw at least two conclusions relevant to congressional intent from Title VII. First, Congress affirmatively intended that state anti-discrimination statutes would operate to regulate conduct covered by Title VII to the same extent as Title VII itself and, thus, in areas that might also be covered by the NLRA. Second, Congress could not have intended to eliminate the operation of state anti-discrimination statutes over claims covered by Title VII because that would actively *impair* the operation of Title VII and frustrate the enforcement scheme Congress envisioned.

*Id.* at 1376 (emphasis in original).

The dissent in *Chaulk Services* referred to the case of *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974), in which an employee filed a

5

discrimination claim that fell within the coverage of the applicable collective bargaining agreement. At issue was whether the employee's remedies provided in the collective bargaining agreement – which were subject to arbitration – precluded a suit in federal court based on Title VII. The Court held that it did not, stating:

> [L]egislative enactments in this area have long evinced a general intent to accord parallel or overlapping remedies against discrimination. In the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.*, Congress indicated that it considered the policy against discrimination to be of the "highest priority." *Newman v. Piggie Park Enterprises*, [390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)]. Consistent with this view, Title VII provides for consideration of employment-discrimination claims in several forums. *See* 42 U.S.C. § 2000e-5(b) (1970 ed., Supp. II) (EEOC); 42 U.S.C. § 2000e-5(c) (1970 ed., Supp. II) (*state and local agencies*); 42 U.S.C. § 2000e-5(f) (1970 ed., Sup. II) (federal courts). And, in general, submission of a claim to one forum does not preclude a later submission to another. Moreover, the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. . . . The clear inference is that Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination. In sum, Title VII's purpose and procedures strongly suggest that an individual does not forfeit his private cause of action if he first pursues his grievance to final arbitration under the non-discrimination clause of a collective bargaining agreement.

*Alexander*, 415 U.S. at 47-49.

The *Alexander* Court quoted an interpretive memorandum to the bill, written by Senator Joseph Clark, as illustrative of legislative intent: " '[n]othing in title VII or anywhere else in this bill affects rights and obligations under the NLRA . . . [T]itle VII is not intended to and does not deny to any individual, rights and remedies which he may pursue under other federal and *state* statutes.' " *Id.* at 48 n. 9 (emphasis added).

Plaintiff argues that this passage merely means that Title VII provides concurrent jurisdiction between the NLRB and the EEOC. This court disagrees. Title VII affirmatively preserved the operation of state anti-discriminatory laws under 42 U.S.C. § 2000e-7. State enforcing agencies, along with anti-discriminatory statutes, are a vital part of Title VII's administrative scheme. *See* 42 U.S.C. § 2000e-5(c). Furthermore, a claimant who wishes to seek redress under Title VII for a discriminatory employment practice occurring in a state which has a law prohibiting such practices, must first commence proceedings under state law. *See id.* "If the law allows [a plaintiff] to proceed under either federal statute [Title VII or the NLRA], rules of preemption cannot be used to prohibit them from exhausting state remedies as required by the federal statute they choose." *Driscoll v. Carpenters Dist. Council of Western Pa.*, 579 A.2d 863, 868 (Pa. 1990).

Thus, the court finds that the underlying issue is a matter that touches a deeply rooted local concern and is only a peripheral concern to federal labor policy. Therefore, the court will adopt the report and recommendation of the magistrate judge. An appropriate order will be issued.

SYLVIA H. RAMBO
United States District Judge

Dated: February 6, 2003.

7